UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Quadrant 4 System Corporation, et al.,<br><br>                      Debtor. | |
| Amherst Partners LLC, solely as Liquidating Trustee of the Quadrant 4 Liquidating Trust,<br><br>                      Plaintiff.<br><br>v.<br><br>Krishna Kurapati, individually, and the Kurapati 1999 Family Trust, by Prasad Praturi, Trustee,<br><br>                      Defendants. | Chapter 11<br>Bankruptcy No. 17 BK 19689<br>Honorable Judge Jack B. Schmetterer<br><br>Adversary No. 19 AP 00809 |

## MEMORANDUM OPINION ON MOTION TO DISMISS [DKT. NO. 41]

Krishna Kurapati, individually, and the Kurapati 1999 Family Trust (collectively, "Defendants") now move to dismiss the adversary proceeding brought against them by Amherst Partners LLC, solely as Liquidating Trustee of the Quadrant 4 Liquidating Trust ("Plaintiff"). For reasons articulated below, Defendants' Motion to Dismiss Adversary Complaint (the "Motion to Dismiss") will be **DENIED** by separate order to be entered concurrently herewith, with leave given to Plaintiff to amend Count I of the Complaint to cover a pleading error.

## BACKGROUND

### A. History

For purposes of this Motion to Dismiss, the Complaint is construed in the light most favorable towards Plaintiff, all well-pleaded facts are accepted as true, and all reasonable inferences are drawn in Plaintiff's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Plaintiff's Complaint, as stated, alleges the following "facts" in this subsection.

Debtor is a corporation headquartered in Illinois. Nandu Thondavadi ("Thondavadi") and Dhru Desai ("Desai"), the-then Chief Executive Officer and Chairman of the board of directors of

Debtor, respectively, controlled Stonegate Holdings, Inc. ("Stonegate"), a significant shareholder of Debtor. In December of 2010, Stonegate executed promissory notes with Defendants. Thondavadi and Desai personally guaranteed these notes.[1] Stonegate eventually defaulted, and Defendants sued in state court. There, a settlement agreement was eventually reached, and an agreed judgment was entered ordering Stonegate, Thondavadi, and Desai, among other things, to pay $500,000 to Defendants over a period of time. Assertedly using misleading and fraudulent bookkeeping entries, on January 6, 2014, Thondavadi caused $280,000 in cash to be conveyed from Debtor's bank account to Defendants to pay off the final installment of the state court judgment (the "Transfer"). Debtor was insolvent at the time of the Transfer based on: (1) the market value of Debtor's assets compared to its liabilities; and (2) negative cash flow from business operations in conjunction with increased debt borrowings and liabilities as reflected in Debtor's Securities and Exchange Commission ("SEC") filings from the year 2013 through the third quarter of 2016. Given that Debtor was not obligated to Defendants at time of the Transfer and allegedly received no benefit in return for the Transfer, Debtor received less than reasonably equivalent value in exchange for the Transfer. Thondavadi and Desai were later arrested for securities fraud and pled guilty to criminal charges for fraud and deceit. On June 29, 2019, the SEC filed a civil action against Debtor, Thondavadi, and Desai.

On June 29, 2019, Debtor filed for bankruptcy. [Bankr. No. 17-19689, Dkt. No. 1]. On July 12, 2018, Debtor's Amended Joint Plan of Liquidation was confirmed. [Bankr. No. 17-19689, Dkt. No. 463]. Plaintiff was then appointed as the Liquidating Trustee of Debtor's Liquidating Trust with the authority to pursue Debtor's avoidance actions. On June 28, 2019, Plaintiff filed the present adversary seeking to avoid and recover fraudulent transfers from Defendants under 11 U.S.C. § 554(b)(1) and the Illinois Uniform Fraudulent Transfer Act ("IUFTA") 740 ILCS 160/5(a)(2) and 740 ILCS 160/6(a). [Dkt. No. 1].

**B. The Present Motion to Dismiss**

On December 4, 2019, Defendants filed the present Motion to Dismiss. In their Motion to Dismiss, Defendants argue that Plaintiff's Complaint fails to plead sufficient facts to state a claim for fraud under Sections 5 and Sections 6 of the IUFTA. Specifically, Defendants contend that actual fraud is not applicable here as Plaintiff does not allege an actual intent to hinder, delay, or fraud. Moreover, Defendants argue that constructive fraud likewise fails here since Debtor

---

[1] The Complaint references that another unnamed individual also personally guaranteed these loans.

received reasonably equivalent value for the Transfer as it was a party to the state court judgment (and therefore benefited from the Transfer). Additionally, Defendants assert that Plaintiff's claims of Debtor's insolvency are conclusory and incorrect based on Debtor's SEC filings. Defendants further argue that Plaintiff's Complaint alleges only general and conclusory averments insufficient to demonstrate facial plausibility under Rule 12(b)(6) and additionally fails to satisfy the heightened pleading standard for allegations of fraud under Rule 9(b). Finally, Defendants argue that Plaintiff lacks standing to pursue this action under the IUFTA as no allegations as to the identity of any hypothetical lien creditor was ever asserted as required by applicable law.

Plaintiff filed its Response on January 10, 2020. [Dkt. No. 50]. In response, Plaintiff argues that determinations as to insolvency and reasonably equivalent value are questions of fact inappropriate to be decided upon in a motion to dismiss. Plaintiff contends that the sufficiency of a complaint's allegations is the only proper consideration on a Rule 12(b)(6) motion whereas the Motion to Dismiss improperly raises and relies on factual allegations that would purportedly defeat its allegations. Plaintiff asserts that it has pled sufficient facts to support the existence of the Transfer, pointing to specific statements in the Complaint regarding the manner, purpose, fraudulent nature, and actors involved in the Transfer. Moreover, Plaintiff argues that the heightened pleading standards of Rule 9(b) do not apply to constructive fraudulent transfer claims. As to standing, Plaintiff asserts that the Complaint specifically references the existence of an existing creditor at the time of the Transfer and that further identification of such a creditor is not required as long as one exists.

Defendants filed their Reply on January 15, 2020. [Dkt. No. 53]. In reply, Defendants argue that the settlement agreement, which purportedly refutes Plaintiff's allegations of the lack of reasonably equivalent value, is amenable to judicial notice as it is referenced in Plaintiff's Complaint and contained in state court records. Additionally, Defendants aver that while determinations of reasonably equivalent value and insolvency involve a question of fact, a court is not prohibited from deciding whether those facts are adequately plead for dismissal purposes. Defendants further contend that while certain carve outs exist for Rule 9(b) requirements for claims under the IUFTA, nonetheless claimants must still plead the circumstances surrounding the elements of the cause of action with sufficiently particularity (which Defendants argue Plaintiff has failed to do here). Particularly, Defendants argue that Plaintiff pleads no facts, but rather

incorrect conclusions, as to reasonably equivalent value and insolvency given the settlement agreement and Debtor's SEC filings.

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157 and 28 U.S.C. § 1334, and this proceeding was thereby referred here by Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

## DISCUSSION

### A. Sufficiency of the Pleadings under Rule 8 and Rule 12

Federal Civil Procedure Rule 8[2] ("Rule 8") and Federal Civil Procedure Rule 12(b)(6)[3] ("Rule 12(b)(6)") establish the requirements for a sufficient pleading. Rule 12(b)(6) permits a court to dismiss claims if the claimant fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint rather than the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "The consideration of a [Rule] 12(b)(6) motion is restricted solely to the pleading, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs." *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, a complaint must clear two "easy-to-clear hurdles" of Rule 8, which lists certain requirements that a pleading must contain. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

First, the complaint must contain enough factual detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the plaintiff is entitled to relief." FED. R. CIV. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

---

[2] Federal Civil Procedure Rule 8 is made applicable to this adversary matter by Federal Bankruptcy Procedure Rule 7008. FED. R. BANKR. P. 7008(a) ("Rule 8 F.R.Civ.P. applies in adversary proceedings.").
[3] Federal Civil Procedure Rule 12 is made applicable to this adversary matter by Federal Bankruptcy Procedure Rule 7012. FED. R. BANKR. P. 7012(b) ("F. R.Civ.P. Rule 12(b)–(i) F.R.Civ.P. applies in adversary proceedings.").

4

do.'" *Twombly*, 550 U.S. at 555. Mere "'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* Instead, Plaintiff must plead some facts to support the claim. *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011). Requiring detailed facts would interfere with the liberal intent of the pleading system, which ensures that claims are heard on their merits. *Concentra Health*, 496 F.3d at 779. Rather, only a very minimal level of factual detail is needed. *Id.*

Second, the complaint's allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Id.* A demonstration of merely conceivable entitlement to relief will not suffice. *Taha v. Int'l Bhd. of Teamsters, Local 781*, No. 19-1085, 2020 WL 132503, at *2 (7th Cir. Jan. 13, 2020). Rather, the facts alleged in the complaint must show that the claim is "plausible on its face." *Twombly*, 550 U.S. at 570. The plausibility standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). To establish plausibility, a plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A determination as to whether a claim is sufficiently plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley*, 671 F.3d at 616 (quoting *Iqbal*, 556 U.S. at 679).

### B. Heightened Pleading Standards Under Rule 9(b)

Federal Civil Procedure Rule 9(b)[4] ("Rule 9(b)") provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The "fraud" which Rule 9(b) encompasses include fraudulent transfer claims, both actual and constructive. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997).

Actual fraud under the Illinois UFTA requires only that a transfer be made with "actual intent to hinder, delay or defraud creditors." 740 Ill. Comp. Stat. Ann. 160/5(a). This actual intent must be proven by clear and convincing evidence. *Wachovia Sec., LLC v. Banco Panamericano,*

---

[4] Federal Civil Procedure Rule 9 is made applicable to this adversary matter by Federal Bankruptcy Procedure Rule 7009. FED. R. BANKR. P. 7012(b) ("Rule 9 F.R.Civ.P. applies in adversary proceedings.").

*Inc.*, 674 F.3d 743, 757 (7th Cir. 2012). However, under Section 5(b), eleven non-exclusive factors, known as "badges of fraud," are set out from which an inference of fraudulent intent may be drawn from. 740 Ill. Comp. Stat. Ann. 160/5(b)(1)–(11); *Frank Ix & Sons, Inc. v. Phillipp Textiles, Inc.*, 165 F.3d 32 (7th Cir. 1998) ("[T]he presence of a sufficient number of these "badges" gives rise to a presumption of fraud.").

A transfer is also "fraudulent" under the IUFTA as to a past or future creditor if the debtor made the transfer:

> without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 Ill. Comp. Stat. Ann. 160/5(a)(2). Furthermore, under Section 6 of the IUFTA, a transfer is fraudulent solely as to a creditor whose claim arose before the transfer was made "if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." 740 Ill. Comp. Stat. Ann. 160/6(a). Under the IUFTA, insolvency is met if "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation" and presumed if "[a] debtor [is generally] not paying his debts as they become due." 740 Ill. Comp. Stat. Ann. 160/3(a), (b).

As to constructive fraud claims made under the IUFTA, since the statute "creates a cause of action for constructive fraud that requires neither evidence of actual intent to defraud nor a specific misrepresentation by the defendant," the test for evaluating such a claim depends on whether the plaintiff has pled the "circumstances surrounding the elements of this statutory cause of action with sufficient particularity to satisfy Rule 9(b)." *General Elec.*, 128 F.3d at 1079. While not explicitly stated in *General Elec.*, to plead the surrounding circumstances with sufficient particularity, generally in fraudulent conveyance cases, this is met if the pleading "ordinarily requires describing the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (applying Rule 9(b) to fraudulent conveyance claims under the

6

Illinois Consumer Fraud and Deceptive Business Practices Act); *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) (applying Rule 9(b) to fraudulent conveyance claims under the False Claims Act); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (applying Rule 9(b) to fraudulent conveyance claims under common law fraud).

### C. Plaintiff's Complaint is Plausible

Defendants first argue that actual fraud and insider fraud are not present and therefore IUFTA Sections 5(a)(1) and 6(b) are not applicable to this case. Defendants' arguments as to actual fraud and insider fraud are not relevant here as Plaintiff's Complaint does not seek relief under those subsections of the IUFTA, but rather under Sections 5(a)(2) and 6(a) which encompass only constructive fraud. [Dkt No. 1, ¶¶ 37, 45].

In regard to constructive fraud, contrary to Defendants' assertions that Plaintiff has failed to plead sufficiently, the allegations in the Complaint do adequately allege both the statutory elements of the cause of action and the circumstances surrounding the Transfer with sufficient particularity.

Indeed, Plaintiff's Complaint lays out how the Transfer satisfies the statutory elements. Specifically, the Transfer, comprising of cash funds belonging to Debtor, was of an interest in Debtor's property. The Transfer was made to the benefit of Defendants as satisfaction of a state court judgment entered in Defendants' favor. Debtor, as it allegedly received nothing in return for the Transfer, received less than reasonably equivalent value in exchange. At the time of the Transfer, Debtor was incurring debts beyond its ability to pay and its capital were unreasonably small in relation to business affairs as "rogue" officers of Debtor were funneling money out of the corporation to benefit their family members and to satisfy personal debts and obligations. Finally, Debtor was asserted to be insolvent at the time of transfer due to its negative operations cash flows, increase in debt borrowing and total liabilities, and lack of sufficient revenue or positive cash flows to pay its debts.

The Complaint additionally adequately pleads with particularity the entire background of the "who, what, when, where, and how of the fraud." The-then Chief Executive Officer and Chairman of the board of directors, Thondavadi and Desai, diverted funds from Debtor. On January 6, 2014, they caused the Transfer to be paid directly from a bank account of Debtor. As high-level officers of Debtor, they utilized their authority to conduct the transmission. This was

7

done to satisfy personal liability on a judgment order entered against them (and other parties) in state court. To hide their wrongdoing, Thondavadi and Desai recorded false entries in corporate records as to the Transfer.

Given the foregoing pleadings, Plaintiff's Complaint is not a hollow complaint. Rather, Plaintiff has sufficiently pled the reason, method, and exact circumstances surrounding the Transfer with particularity to satisfy Rule 9(b). Plaintiff's Complaint is plausible on its face to state a claim under the IUFTA.

Defendants would have the analysis go further and evaluate Plaintiff's allegations against other public records for internal consistency, an issue that cannot be addressed in considering the motion to dismiss. Defendants urge the court to go beyond viewing the facts alleged in the complaint in a light favorable to the pleader to instead find that Debtor received reasonably equivalent value in exchange for the Transfer and/or that Debtor was not insolvent. Whether a debtor received reasonably equivalent value for a transfer is a question of fact. *In re Wierzbicki*, 830 F.3d 683, 686 (7th Cir. 2016). So is insolvency. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1070 (7th Cir. 2013). As explained above, the pleader's responsibility to "state a claim to relief that is plausible on its face" does not imply that, at this stage, it must be decided whose version to believe, or which version is more likely than not. *See Twombly*, 550 U.S. at 570. Such analysis would be improper on a motion to dismiss. *Swanson*, 614 F.3d at 404. Instead, these arguments should be raised in an answer to the Complaint.

### D. Plaintiff Has Not Demonstrated Standing for Count I

Section 544(b) of the Bankruptcy Code grants the trustee the power to "commandeer the rights of an unsecured creditor who could have avoided the transfer under applicable law." 11 U.S.C. § 544(b)(1); *Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002). This so-called "strong-arm" power allows the bankruptcy trustee to do what a creditor outside of bankruptcy could have done, except that the property will be recovered for benefit of the estate. *In re Equip. Acquisition Res., Inc.*, 742 F.3d 743, 746 (7th Cir. 2014). But, to utilize this power, an unsecured creditor that could have brought the action must exist; in essence, the "trustee stands in the shoes of [such] an actual unsecured creditor." *Id.*

Plaintiff's Complaint lies under the IUFTA. As to Count I of the Complaint, which is made under Section 5(a)(2), the IUFTA grants standing under this section to a "creditor whether the creditor's claim arose before or after the transfer was made." 740 Ill. Comp. Stat. Ann. 160/5(a).

8

In contrast, as to Count II of the Complaint, which is made under Section 6(a), the IUFTA grants standing only to a "creditor whose claim arose before the transfer was made." 740 Ill. Comp. Stat. Ann. 160/6(a).

Defendants argue that Plaintiff lacks standing as no hypothetical lien creditor was pled in Count I of the Complaint by category or by description. Defendants are correct. Indeed, Plaintiff did not plead the existence of such an actual unsecured creditor in Count I of the Complaint. Rather, Plaintiff only pled the existence of such an actual unsecured creditor in Count II of the Complaint. In Count II of the Complaint, Plaintiff asserts that "Q4 had one or more creditors whose claim(s) arose prior to and existed as of the time of the Fraudulent Transfer." [Dkt No. 1, ¶¶ 44]. But, no such assertion is found in Count I of the Complaint.

Defendants further argue that some facts must be pled as to identity of such a hypothetical lien creditor. For this, Defendants are not correct. Plaintiff is not required to specifically plead facts regarding the nature of such an unsecured creditor. "The trustee need not identify the creditor, so long as the unsecured creditor exists." *In re Image Worldwide, Ltd.*, 139 F.3d 574, 577 (7th Cir. 1998).

Accordingly, Plaintiff has pled sufficient facts to be granted standing to maintain its claims under Count II of the Complaint. But, through an apparent pleading error, Plaintiff has not currently pled sufficient facts to be granted standing under Count I of the Complaint. However, the fact that Plaintiff has not adequately done so is not grounds to grant the relief Defendants request, which is dismissal with prejudice.

Under Federal Civil Procedure Rule 15(a)[5] ("Rule 15(a)"), leave to amend a complaint is to be "freely given when justice so requires," and the rule expressly grants plaintiffs an opportunity to amend their complaint "once as a matter of course before being served with a responsive pleading." FED. R. CIV. P. 15(a). A motion to dismiss under Rule 12(b)(6) is not a responsive pleading, and if no answer has been filed, a plaintiff "ordinarily retains the ability to amend his complaint once as a matter of right, even after a court grants a motion to dismiss." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Furthermore, Rule 15(a) has been interpreted by the Supreme Court to "require a district court to allow amendment unless there is a good reason— futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Life Plans, Inc.*

---

[5] Federal Civil Procedure Rule 15 is made applicable to this adversary matter by Federal Bankruptcy Procedure Rule 7015. FED. R. BANKR. P. 7015 ("Rule 15 F.R.Civ.P. applies in adversary proceedings.").

9

*v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357–58 (7th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). No exception that might justify denying amendment of the Complaint can be found in this case. As explained above, Plaintiff's Complaint is plausible on its face. Plaintiff has adequately pled a cause of action under the IUFTA. Defendants do not argue that undue delay, and unfair prejudice, or bad faith can be found.

Accordingly, dismissal with prejudice is not warranted. Because Defendants have not yet filed an Answer to the Complaint, Plaintiff retains the ability to amend its Complaint as of right to correct Count I of the Complaint.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be **DENIED** by separate order entered concurrently herewith, on assumption that Plaintiff is willing and able to correct Count I of the Complaint as is necessary for it to stand.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 22 day of January 2020